No. 1400.

WILLIAM CASTAGNIE ET AL. VS. THERESE BOULIRIS ET AL.

The proof allowed to be introduced, in the absence of documentary evidence and direct oral testimony establishing a marriage, must be clear and unmistakable, to raise a presumption of marriage, as is settled by the jurisprudence on the subject, which is affirmed.

Children born from the intercourse of persons living publicly as man and wife, and

Castagnie et al. vs. Bouliris et al.

introduced by them as their offspring, must establish clearly their legitimate filiation, in order to recover in a petitory action, from one in actual possession as owner, and who claims and establishes a title to the real estate revendicated. Natural children, even when duly acknowledged in the form prescribed by law, do not enjoy the rights and privileges of revendication with which the law vests forced heirs, whenever their *légitime* has been trenched upon.

In a petitory action, the plaintiff must recover on the strength of his own title.

APPEAL from the Twenty-first District Court, Parish of Iberia. *Mouton, J.*

---

*Foster & Broussard* for Plaintiffs and Appellees:

1. Where the question of legitimacy is not raised by the pleadings, but merely the question of heirship, it is sufficient to prove descent.

2. Where a man introduces a woman to his friends as his wife, calls her his wife, and he and she live together publicly as man and wife until her death, and their children, born while they are thus living together, are reared and cared for as their legal offspring, at the common domicile, and bear the name of their father, the law will presume that they have been lawfully married, and that their children are legitimate, until it is shown that no marriage between them ever took place, or that it was void on account of some nullity established by law. 30 An. 1388.

3. Marriage may be proved by every species of evidence not prohibited by law, which does not presuppose a higher species of evidence within the power of the party. 20 An. 97; 32 An. 308.

4. The fact of marriage may be proved by circumstantial testimony, and by general reputation, cohabitation, and long residence together. 3 La. 33; 35 An. 630.

5. It is not to be presumed that those who hold themselves out in society as man and wife are rearing a family of children at their domestic board, to whom the father gives his name, over whom he exercises a parent's authority and administration, a parent's protection and support, are living in open disregard of public morals and common decency, and that their offspring are bastards. 6 La. 4, 70; 30 An. 1397, 2 An. 945.

6. It will be presumed that the community of acquets and gains exist between the husband and wife, until the contrary is shown. 30 An. 1106.

7. Where after the marriage and under the regime of the community, a business which had formerly belonged to and been conducted by the wife, is conducted in the name of the husband, it becomes the business of the community. 36 An. 390.

8. Lands purchased in the name of the wife and partly with her paraphernal funds under the administration of the husband, and partly with the funds of the community, fall into the community. 39 An. 377.

9. The presumption of law is that property purchased during the marriage, whether in the name of both or either spouse, is community property. R. C. C. 2402. The wife may rebut this presumption, in doing which the burden of proof of three crucial facts is upon her, to-wit: (1) paraphernality of the funds; (2) administration thereof separately and apart from her husband; (3) investment by her. 39 An. 632. In the absence of which proof the property will be presumed to be community.

10. Legal heirs, up to the amount of their legitime, are not estopped by the declaration in the act of sale, from proving that property bought in the wife's name,

Castagnie et al. vs. Bouliris et al.

declared to be bought with her funds, is community property. 30 An. 1036; 33. An. 609 and 819; 35 An. 33 and 570.

11. Legal heirs are not estopped, by the declaration in the act of sale, from proving that property bought in wife's name, declared to be bought with her funds in community property, when these funds are purely speculative, and evidence appears in the declaration itself affording full proof of the fact that the wife had no funds whatever with which to meet the obligation contracted in the act of sale.

12. The court may, *ex proprio motu*, where it does not appear affirmatively that the amount involved exceeds two thousand dollars, dismiss the appeal. 34 An. 406; 38 An. 395; 36 An. 419.

## L. T. *Dulany* for Defendants and Appellants:

1. It is a general rule of law that plaintiff must make his case not only probable, but certain. Hennens' Dig. Ev. XIII, A. No. 1.

2. A case involving the question of legitimacy is no exception to the rule. 15 An. 410.

3. The proof of legitimacy or legitimate filiation, involves the proof of the marriage of the parents, and the identity of the child as the issue of that marriage; it differs essentially from the proof of the filiation of legitimate children, wherein the marriage of the parents is admitted or is established. C. N. Ast. 319; Duranton, Vol. 2, Tit. 7, Sec. 1; 20 An. 98; 15 An. 410.

4. Under the laws of Louisiana marriage is a contract that must be established by legal evidence; in the absence of the best evidence, secondary and parol will be admitted, but the absence of the best evidence must be first accounted for. 15 An. 410.

5. The court will take judicial notice of the fact that a record of marriages is kept in the public records of the parishes of this State, and also of the universal custom in all Catholic churches, that the register of marriages and baptisms is kept with great care; the failure of plaintiff to procure such evidence will make proof against him. 40 An. 81.

6. When, in a case involving the question of marriage, no direct evidence of the marriage is adduced, or its absence accounted for, all the presumptions will be against the marriage. 15 An. 410.

7. "Although our jurisprudence has recognized the rule that marriage will be presumed from long cohabitation, and general reputation and conduct, it is still a fact that under our laws marriage is a contract, the best evidence of which is some act as prescribed by the Civil Code showing the consent or agreement of the parties to contract marriage." 35 An. 632.

8. Long cohabitation, and general reputation and conduct will not raise a presumption that the parties were married, unless the facts show that the relations between the parties were characterized in the beginning by a free consent to contract the obligation of marriage, and it must exclude the idea that the union began and the parties were drawn together merely through the promptings of sensuality. 35 An. 633.

9. "Agreeing to live together as man and wife does not make marriage; the law does not sanction voluntary cohabitation, nor elevate concubinage of whatever duration to the dignity of marriage." Bishop on Marriage and Divorce; 30 An. 1398.

10. Facts from which to draw the presumption of marriage must be concise, con-

sistent and weighty, and these known facts should draw with them the unknown fact as an almost necessary consequence. 3 An. 103; 20 An. 98.

11. If the courts have somewhat relaxed the rigor of the law, to allow proof of marriage by long cohabitation and reputation, etc., it was only in the interest of persons who were the issue of marriages of which no direct proof could be adduced, and where the circumstantial evidence was conclusive in favor of the marriage, and excluded the idea of an illicit union. 35 An. 633.

12. Testimony as to the visits and introduction of the woman as a wife should be considered with relation to the standing and respectability of the parties and visitors. 20 An. 495; 15 An. 410; 20 An. 97.

13. Verbal declarations of the parties, though deceased, are legal evidence to show that their intercourse was illicit and that they were not married. 15 An. 46 and 410; 20 An. 97.

14. Evidence offered and admitted for a special purpose, and especially restricted to that purpose by the party offering it, must be considered for that purpose alone.

15. When the husband was a party to act of purchase of property in the name of the wife, reciting that the purchase is made with her paraphernal funds, and that neither he nor his heirs will ever claim the property as belonging to the community—he can not contradict the recitals of the deed; the question is one of estoppel. Creditors and forced heirs alone could do so, but the latter only to the extent of their legitime upon averments of fraud or error and injury. 35 An. 35; 41 An. 493.

---

The opinion of the court was delivered by

BERMUDEZ, C. J.    This is a petitory action against parties in possession.

Originally, it was brought by William Castanié and Mary Bouleries against Ed. Laughlin and Therese Bouleries.

Mary Bouleries having died, William Castanié, her brother, had himself appointed administrator of her estate, and in that capacity continued the prosecution of the suit.

The action was for the recovery of the undivided half of four pieces of real estate, two in the possession of Laughlin and two in that of Therese Bouleries.

The plaintiffs claimed as the legitimate grandchildren of J. B. Bouleries; the first named through his mother, Delphine; the second through her father, Levy, representing themselves as their lawful issue.

The contention on one side is, that J. B. Bouleries had married very long ago Adèle Chacata; that from that union several children were born, all of whom died, save Delphine and Levy; that the former married B. C. Castanié, William being the issue of that union; that the latter also married, and that Mary Bouleries was born from that

marriage; that, after the death of Adèle Chacata, the grandmother, J. B. Bouleries married Thérèse Mailles, then widow of Bernard Delord; that, during the marriage, four pieces of real estate were acquired for the benefit of the community; that, at the death of J. B. Bouleries, half of said property vested in his widow, and the remaining half in his legal heirs, namely, his grandchildren, William Castanié and Mary Bouleries; that two of said pieces of real estate were sold by the widow, as though her exclusive property, to Laughlin, who could only acquire her share; that the widow is in possession of the remaining half of the other two pieces which belongs to the grandchildren by inheritance from their grandfather, J. B. Bouleries.

It is further insisted that the widow is liable for rents and revenues from the beginning of the illegal possession to the time of surrender to the rightful owners.

On the other hand, Laughlin claimed an absolute title to the entirety of the two lots sold to him by the widow, as the same was her personal and exclusive property.

The widow contended, *first*, that the plaintiffs were not the legitimate grandchildren of J. B. Bouleries; and, *second*, even then, that the two lots were paraphernal property, acquired with her individual funds, under her separate administration and invested by her in the purchase. Eventually, under the averment that she had in good faith constructed buildings and placed improvements on the lots, the widow, reconvening, claimed the value thereof.

A good deal of proof was admitted, some over objections, consisting of documentary evidence and oral testimony.

There was judgment in favor of Laughlin from which no appeal was taken and which must remain undisturbed.

Further, there was judgment in favor of plaintiffs, recognizing them as the legitimate grandchildren of J. B. Bouleries, declaring one of the two lots to be community property and estopping them from claiming any title to the other lot. The judgment went no further.

It proved satisfactory to neither side.

The plaintiffs appealed and ask a recognition of their rights to the second lot and to rents and revenues; and the defendant, Therese Bouleries, as appellee, prays for an amendment of the judgment, by reversing it, in so far as it went in favor of the plaintiffs, and, event-

ually, by allowing her the value of the buildings and improvements placed by her on the lots in good faith.

It is clear, that in order to recover from one claiming title to real estate of which he is in possession, a plaintiff can only do so on the strength of his own title.

In order to succeed in the present action, the plaintiffs ought to have established the marriage of J. B. Bouleries with Adèle Chacata, either by the act of celebration, or in its default, by witnesses, or by very strong circumstances establishing a presumption of marriage; and besides, the marriage of their respective authors; in all of which they have altogether failed.

The legal propositions relied upon by the plaintiffs, touching the circumstances from which the presumption of a marriage arises and which are, to a certain extent, set forth in the authorities cited from the adjudicated cases in this State, and to which no special reference would subserve any useful purpose, can not be and are not disputed by the defendant, who, on the contrary, readily concedes them. The difficulty consists in applying them to the facts established in this controversy, which, far from leaving on the mind an impression of such presumption, rather dispel all inclination to receive the same.

It does not appear, from the written evidence, or from the oral testimony, that either J. B. Bouleries or Adèle Chacata ever represented themselves as having been *married*, ever alluded to any circumstance about their *marriage*, or that any one was ever heard to say that he had attended their marriage, or had heard any one mention anything about it as an actually occurred fact.

No effort is shown to have been made to discover any written evidence of it, either in the records of a church or of any public office in the vicinity of the place where they resided and at which, if celebrated, it occurred.

The very brother of J. B. Bouleries, who was on intimate terms with him all his life, was heard as a witness, and he utters not a word about the fact of the *marriage*, which, certainly, had it ever taken place, would have been, in some way, at least by hearsay, to his knowledge. The manner in which he testifies shows that he does not really believe they ever were actually married.

The other witnesses heard do not state any circumstance from which the presumption of the marriage may be inferred.

The mere fact that the parties lived publicly as man and wife for

a length of time and treated their issue as though they were born in lawful wedlock, under the surrounding circumstances of this case, is insufficient to raise the presumption claimed.

The defendant, who was heard as a witness, testified that Bouleries told her that he had never married Adèle Chacata, and that their children were illegitimate.

Of course, this testimony, coming from the party interested in making such statement, as emanating from one whose mouth, sealed in death can not be heard counter to it, is very weak, but feeble as it is, it is entitled to some weight. It can not be presumed that the woman has perjured herself, particularly as her character for truth and veracity remains altogether unimpeached.

It is not contended in the least—on the contrary, it is conceded— that the proof clearly establishes a natural filiation of the plaintiffs way back to J. B. Bouleries and Adèle Chacata; but, even if the proof had shown that the former had duly acknowledged, in the form prescribed by law, both Delphine and Levy as his children, and, besides, William and Mary as his grandchildren, this would not have conferred upon the latter the rights and privileges of revendication accorded by law to forced heirs, whenever their *legitime* has been trenched upon in some way or other.

The documentary evidence shows that the two lots were acquired by the defendant with the expressed statement that they were purchased out of her personal funds and for her separate advantage and exclusive benefit, or language to that effect; the investment, thus declared to have been made, having been admitted by J. B. Bouleries, who has signed the deeds.

The plaintiffs, not having the rights of forced heirs, and not being creditors, urging injury, etc., have no standing in court to contest the title of the defendant to the lots, who, we think, has even then satisfactorily proved them to be her separate estate, which has, therefore, never formed part of the community between Bouleries and her.

It is, therefore, ordered and decreed that the judgment appealed from be reversed, so far as it recognizes title in plaintiffs to the half of one of the two lots involved; that, so far as it is rendered in favor of defendant, Therese Bouleries, it be affirmed; and, it is further adjudged, that it be so amended as to reject the plaintiffs' demand

entirely, and to quiet defendant absolutely in the ownership and possession of said lots; the costs of appeal to be paid by the plaintiffs and appellants.

Breaux, J., recuses himself as having been of counsel.

---

## ON APPLICATION FOR REHEARING.

WATKINS, J. Alleging themselves to be the sole surviving descendants of J. B. Bouleries, their grandfather, the plaintiffs institute this action against his surviving widow of an alleged second marriage, and one of her transferees, for the recovery of their said ancestors' one-half interest in certain real estate, which was acquired during said second marriage.

Plaintiffs' contention is, that very many years ago, their grandfather was married to Adelé Chacata, and, that of this marriage their parents, Delphine and Levy Bouleries were the sole surviving issue.

The answer of the defendants is a general denial, coupled with the special averment that the plaintiffs are not heirs of J. B. Bouleries, and that the property in dispute was, and is, not community, but belongs to his widow's separate paraphernal estate.

Our opinion holds with the defendant's theory on both of these propositions.

It declares substantially that there is in the record no proof of such a marriage, or even that the said parties ever declared that they were or ever had been married. That no one was ever heard to say that he had witnessed the celebration of a marriage between them. That the plaintiffs appear to have made *no search* in the records of any church or public office of the vicinity of where said parties lived for written or record proof of such a marriage.

It then announces as a proposition of law, that "the mere fact that the parties lived publicly as man and wife for a length of time, and treated their issue *as though they were born in lawful wedlock*, is insufficient, under the circumstances surrounding this case, to raise the presumption claimed."

It then states as an additional fact worthy of note, that the proof abundantly discloses, and that it is conceded by defendants to be a fact, that there was a filiation between said parties for many years; but it announces as a legal proposition, that *even if* the plaintiffs' ancestor had duly acknowledged their father and mother as his

Castagnie et al. vs. Bouliris et al.

natural children in the form prescribed by law, this acknowledgment would not have conferred upon the plaintiffs, as their children, the rights and privileges of revendication of property which the law accords *forced* heirs in case their *legitime* had been trenched upon.

Our opinion then states, as a fact—and this proposition is to be taken alternatively—that it appears from the defendant's titles that she purchased the property in her own paraphernal right, with the concurrence of her husband, J. B. Bouleries, who joined his wife therein, and that plaintiffs have no standing in court as *forced* heirs or creditors would to attack them.

The objections urged in plaintiffs' and appellee's application, to our opinion are: (1) That the defendant's answer does not fairly raise the question of the legitimacy of their parentage, that the maintenance of that proposition was and is a *surprise* to them, and that our judgment and decree should have been one of *non-suit*, only; (2) that the defendant's deeds contain no recital disclosing the paraphernal character of the acquisition; (3) that the proof introduced *aliunde* was insufficient to establish that fact which is essential to maintain defendant's title.

(*a*) As plaintiffs' title was alleged to be one by inheritance, and the answer denied their heirship, *definite* proof was absolutely required of plaintiffs' *legitimate* heirship to entitle them to recover from a stranger; and, in thus instituting suit, they incurred this risk, and the burden of making such proof.

We can not understand in what manner they were taken by surprise; but if the interpretation placed by the District Judge upon defendant's answer caused them surprise, the proper course would have been for their counsel to have *then* stated the grounds of surprise, demanded a continuance, and reserved a bill of exceptions to the judge's declination, if refused. On such a showing we could have given plaintiff relief from any error the judge below might have committed.

We are of opinion that the defendants are fully entitled to the judgment pronounced.

(*b*) Our opinion does not hold that defendant, Therese Bouleries, is the owner, in her individual paraphernal right, of the property in controversy, but that plaintiffs have no standing in court as *legitimate* grandchildren of J. B. Bouleries to have the titles interpreted and the property declared community property. That *even if* the

· proof had disclosed the fact that their grandfather had duly and in proper form of law acknowledged the issue of his filiation with Adelé Chacata as his natural children, that such acknowledgment would not have conferred upon such issue the rights and privileges · of *forced* heirs of their grandfather, and hence their position would not have been improved.

Now, it is worthy of note that this proposition is hypothetically stated, and not as one that is substantiated by proof.

A reëxamination of the record fails to satisfy our minds of the correctness of the allegations of the application. We are unable to find any proof of marriage, or acknowledgment either. Really, the application does not contend that there is any such evidence in the record. Reduced to a last analysis, the ingenious argument is, that *as* the judgment should have been one of *non-suit*, therefore the legitimacy of the plaintiffs is an *undetermined* question, and therefore they have the *status* of *forced* heirs, and the corresponding rights of forced heirs to revendicate the property.

It does not avail the plaintiff to invoke the ruling in Bennett vs. Cignori, 41 An. 1145, in which a *non-suit* was rendered. The court · did so because the plaintiff there had failed to introduce evidence which was within his reach; but it is not pretended in the present instance that any proof exists. It is claimed, on the contrary, that all the evidence of which the case was susceptible was introduced. The plaintiffs have no right to keep perpetually a sword hanging over defendant's head by the *reserve* of a right to eternal litigation. *Interest sei publicæ et sit finis litium.*

Having maintained the *finality* of the judgment, their argument is fully answered and the correctness of the opinion established.

Rehearing refused.