### No. 11,368.

DELIA JACKSON, INDIVIDUALLY AND AS TUTRIX, VS. ILLINOIS CENTRAL RAILROAD COMPANY.

1. In a suit for damages for the death of a person alleged to have been caused by the negligence of the employes of a railroad company, where the plaintiffs allege themselves to be the widow and children of the deceased (the widow suing for herself individually and for the minors as their mother and tutrix), defendant is not entitled under an unrestricted offer or tender of evidence to introduce generally and *against all the plaintiffs* an extra-judicial admission made by the mother since the institution of the suit, that she was not married to the deceased, when prior to this admission she had testified as a witness in the case that she was his widow. Had she sued alone and in her own behalf, such an admission, if legally proved, was admissible against her. *Quoad* admissions made by her as affecting herself, her *status* as a party was not merged into that of a witness.

2. Where, in such a case, the Supreme Court has grave doubts as to the fact of the marriage of the plaintiff with the deceased, it will remand the case for a new trial, notwithstanding the verdict of a jury and the judgment thereon rendered.

A PPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

### B. R. *Forman*, Attorney for Plaintiff and Appellee:

1. Neither a license, witnesses, nor a written act, are essential to the validity of a marriage. It may be proved by any competent evidence. Reputation, having cohabitation as man and wife, as well as direct testimony. Taylor vs. Smith, 3 La. 33; Holmes vs. Holmes, 5 La. 470; Hobdy vs. Jones, 2 An. 944; Hubbell vs. Inkstein, 7 An. 253; Succession Pearce, 30 An. 1169; Sabalot vs. Populus, 31 An. 854.
2. In order to contradict a witness (examined under commission or in open court) by contradictory statements—if in writing they should first be exhibited or read to the witness, if verbal the witness should be first asked whether or not she had made such statements, and an opportunity afforded for explanation.
3. *Ex parte* statements can be received in no other way; and if the contradictory statements are made after the depositions are given still the rule is not changed—party must give notice and take out a new commission. Rice on Evidence, page 618. This is especially true of the *ex parte* statements of a tutrix occupying a fiduciary relation to minors in whose behalf she is suing.
4. Gratuitous passengers are entitled to safe carriage, and can recover damages for injuries sustained by the negligence of those operating the train of a railway. Hutchinson on Carriers, Secs. 500, 563, 564; Austin vs. Great Western Ry. Co., 2 Queen's Bench Cases, 442; Jacobas vs. St. Paul & Chicago R. R. Co., 20 Minnesota, 125; Buffalo R. R. Co. vs. O'Hara, 9 American and English R. R. Cases (Pa.), 317, 1882; Railway Co. vs. Stevens, 9 U. S. 655; Ohio & Miss. Ry. Co. vs. Nickless, 71 Ind. 271; Godin vs. St. Paul & Duluth Ry. Co , 30 Minn. 217, (1883) ; Lemon vs. Chausler, 68 Mo. 340; Ohio & Miss. Ry. Co. vs. Selby, 47 Ind. 471; Waterbury vs. N. Y. Central R. R. Co.,17 Fed. Rep. 671.
5. Plaintiff was not a gratuitous passenger; his *labor* and the freight received for carrying the staves was the consideration for his carriage, and being lawfully on the train he was entitled to safe carriage. Ib.
6. In cases of gross negligence it is proper to give such damage as would serve as a warning to defendant. Block vs. Carrollton R. R. Co., 10 An. 40.

### *Farrar, Leake & Lemle*, Attorneys for Defendant and Appellant:

1. The judge *a quo* should have sustained the motion for a new trial, and thus enabled defendant to have proved that plaintiffs were not the widow and minor children of James Jackson. It being patent on the face of the record, defendant could not, in the exercise of due diligence, have obtained said evidence prior to the trial herein.
2. The evidence does not establish that plaintiffs were the widow and minor children of the said James Jackson, alleged to have been killed.
3. The evidence shows that the alleged James Jackson was killed instantly; hence, no damages can be awarded for the suffering of the deceased. 44 An. 698.

4.  Plaintiffs have suffered no pecuniary loss, as the evidence shows Jackson did not contribute to their support.  44 An. 689; 42 An. 827.
5.  Punitive and exemplary damages can not be allowed.  42 An. 824-829; 10 An. 38·
6.  The damages awarded are excessive.  No damages at all should be awarded, or at the very utmost merely nominal damages.  42 An. 824.

The opinion of the court was delivered by

NICHOLLS, C. J.   Plaintiff appears in this suit individually on her own behalf and as natural tutrix of the minors Delphine Jackson and David Jackson.   She alleges that she is the widow and the minors named are the children of James Jackson, issue of her marriage with him.   That on or about the 27th April, 1892, James Jackson was employed by the Brooklyn Cooperage Company to go to a point near Manchac, on the line of the Illinois Central Railroad Company, to load one of its trains with staves, which the Illinois Central Railroad had agreed to carry and transport from a point on its line of road near Manchac to New Orleans; that the Brooklyn Cooperage Company engaged for said Jackson's passage on the said railroad to be carried from New Orleans to near Manchac and return to New Orleans, and it was the duty of the said company to safely carry said Jackson, and it did carry him from New Orleans to the point on the line of the railroad near Manchac with other laborers, where they loaded the cars of the defendant company with staves; and the said Jackson was then directed to get upon the train of the defendant company to be transported back to New Orleans, which he did after dark on or about the said 27th April, 1892, and was entitled to safe carriage to New Orleans; but the officers and agents of the said Illinois Central Railroad Company were guilty of gross negligence in the operation and running of its train upon which the said Jackson was being transported, in that they had the engine reversed, with the headlight and the cowcatcher turned to the north against the end of the box car of the train, when the train was traveling at rapid speed south, so that the engineer and fireman could not look forward and see obstructions and had not the benefit of the headlight to observe obstructions, and had not the benefit of the cowcatcher to throw obstructions off the track, and when so proceeding in such a seriously negligent and dangerous manner the said engine and train ran against some cows upon the track; that no bell was rung and no whistle was blown or warning given to frighten the said cows off the track, and by reason thereof the said train was de-

railed and the said Jackson was crushed to death and killed, whereby he suffered great agony of body and mind, and damage to the sum of one thousand dollars for his sufferings, which right of action has survived to petitioner, his widow, and his two aforementioned minor children, and that petitioner individually and the said two minor children of the deceased were damaged by the loss of the husband and father aforesaid in the sum of nine thousand dollars; that the said railroad company could have prevented said killing and injury and did not do so. Petitioner prayed for judgment against the rail-road company for ten thousand dollars, with legal interest from date of judgment until paid.

Defendant filed an answer denying generally all the allegations of plaintiff's petition, and specially denying that the plaintiff was the legal wife of the deceased; that Jackson was killed on its train on the 27th of April, 1892, and that it was guilty of negligence in the premises.

The case was tried by a jury, which returned a verdict in favor of plaintiff for $5000. Defendant moved for a new trial, which was overruled, and judgment having been rendered in conformity to the verdict defendant appealed.

The only testimony adduced on the trial to support the allegation that Delia Jackson was the wife of the deceased and that the two minors are his children—issue of her marriage with him, was that of the plaintiff herself and one Joseph C. Camors, the testimony of both having been taken under commission.

All that the latter said on the subject was: "I knew the late James Jackson and Delia, who he claimed as his wife, and their two children, David and Delphine. He did leave (surviving him) his said widow, Delia Jackson, and their two children."

The plaintiff herself said: "I knew the late James Jackson. He was my husband. He left myself as his widow and two minor children, one named David and the other named Delphine."

Defendant filed no cross-interrogatories to either of these parties, but prior to the issuing of the commission objected to the questions propounded, on the ground that the interrogatories were leading and suggestive of the answers.

This objection was renewed when the depositions were offered, but it was overruled. The interrogatory objected to was as follows: "Did you know the late James Jackson, who was killed on the

Illinois Central Railroad, near Kenner, about 27th of April, 1892? Did he leave a widow and minor children, and what are their names?''

After plaintiff's case was closed defendant offered in evidence an *ex parte* affidavit, made by the plaintiff before Jones Cross, notary public, on the 25th May, 1893.   The affidavit was as follows:

BATON ROUGE, May 25, 1893.

*To whom it may concern:*

Be it known that, whereas, I, Delia Jackson, the undersigned, have recently made oath to the statement that one James Jackson, who was killed by a train on the Illinois Central Railroad on or about the —day of — 1891 or 1892, was my husband; now, therefore, I make this my declaration for the purpose of qualifying and explaining my oath aforementioned. I did not mean to swear falsely that the said James Jackson was my lawfully wedded husband or that I was legally married to him under a license from the State, but only that he claimed me as his wife and I claimed him as my husband, and that we lived together as man and wife.   We were never legally married, and I did not intend to swear falsely when I called him my husband, but only called him husband as I was accustomed to do, because of his living with me in that relation, and I make this explanation because I want to state the truth in regard to the matter and have it properly understood.

her<br/>(Signed)        DELIA X JACKSON.<br/>mark.

Witness:
   (Signed)    C. F. ALEXANDER.
   (Signed)    K. S. COLLINS.

Before me, T. Jones Cross, a notary public duly commissioned and sworn in and for the parish of East Baton Rouge and State of Louisiana, personally appeared Delia Jackson, known to me, who being duly sworn and after due reading of the foregoing statement of facts did under oath declare the same to be true and made voluntarily by her for the purpose therein set forth.

Thus done and passed at my office in the city of Baton Rouge in the presence of Messrs. Cornelius F. Alexander and Kirby S. Collins, competent witnesses, who sign as such. Delia Jackson being incompetent to write affixes her signature by mark, as attest my hand and official seal, the day and date first above written.

(Signed)    T. JONES CROSS,<br/>*Notary Public.*

Jackson as Tutrix vs. Railroad Co.

Plaintiff objected to the introduction in evidence of this affidavit on the ground " that pursuant to an order of court a commission was issued to take the deposition of Delia Jackson, the plaintiff in this suit, and she was asked whether or not James Jackson, who was claimed to have been killed on the 27th April, 1892, had left a widow and minor children, and what were their names; that defendant was duly served with notice to cross-interrogatories and declined to cross them, and that the method of endeavoring to qualify the deposition of a witness should be by cross-questions and not by *ex parte* affidavits, inasmuch as it was impossible to show the circumstances and surroundings by which an affidavit may be obtained or extorted from the witness, and that no *ex parte* affidavits can be received, as the case had been at issue since the 25th of April, was fixed for the trial on Tuesday the 23d of May, was then continued, according to the minutes of the court, to Thursday the 25th and then to the 26th, all of which time the counsel for the defendant company gave counsel for plaintiff no notice of his intention to qualify the testimony of the witness, whose deposition was returned in court on the 23d of May and opened by the clerk. The court sustained the objection, stating that the affidavit was dated May 25, 1893, the day before the trial of the case. That there was no evidence before the court as to the manner in which the affidavit was obtained. That it might have been obtained by threats or violence. That the man who had obtained the affidavit had not been presented to the court to explain how or why he obtained it. That it might have been obtained by bribery or corruption. That it was not justice to permit an affidavit of that kind to be offered. Defendant reserved a bill of exceptions, to which, with the leave of the court, the affidavit was annexed and made part thereof. Counsel for defendant testified that knowledge of this affidavit had only come to him the evening preceding the trial and that the affidavit itself had only been handed him on the morning of the trial.

Among several grounds assigned by the defendant for the new trial, which was refused, were two which we specially mention:

1. That the court erred as matter of law in refusing to allow defendant's counsel to read to the jury the *ex parte* affidavit of Delia Jackson; that the jury are the sole judges of credibility of evidence, and the court had no right to exclude said document from the jury's consideration.

2. That defendant has discovered since the trial hereof new evidence, to the effect that Delia Jackson never at any time claimed to have been married to James Jackson, deceased, but on the contrary, that she has many times stated, in the presence of witnesses, that she never was so married, and that such evidence is set forth in the affidavits of Joseph. C. Camors, J. H. Duncan, C. F. Alexander, Kirby S. Collins, and statement in the handwriting of Thomas D. Dupré, the notary before whom was taken the testimony of Joseph C. Camors and Delia Jackson, all made part of the motion for the new trial.

Camors' affidavit was to the effect that he had recently appeared before Dupré, notary, and given testimony, stating that he knew one James Jackson, colored, reported to have been killed by the Illinois Central Railroad Company, and Delia Jackson, colored, as husband and wife; that for the purpose of explaining his testimony he declared he did not mean to say that the said parties were legally married, but on the contrary, that they had only lived together as man and wife, and were not legally married. That Delia Jackson stated to him, after he made the statement, that she was not legally married to James Jackson, but that they had only lived together as man and wife; that he stated this fact to the notary; that if his testimony was made to say otherwise it was erroneous, and he desired it to be corrected so as to accord with his affidavit.

Duncan, Collins and Alexander deposed under oath that when Delia Jackson appeared before Cross, notary, they heard her make the voluntary statement that she was not legally married to James Jackson, but that she and Jackson had lived together as man and wife, and recognized each other as such.

In Dupré's statement he says: "Since the death of James Jackson I have heard Delia Jackson, who resides here (Baton Rouge), and who claims to be his wife, say that she was not legally married to Jackson; that she made this statement in his presence about the —— day of ————. She said they were living together as man and wife and she claimed him as her husband, but that they were not legally married. This statement was made on the day he took her deposition in the case of Delia Jackson vs. Illinois Central Railroad. It occurred in this manner: When I swore Joe C. Camors, she was also a witness. He objected to signing the statement that they were legally married, as he did not know, but that they had always

passed for man and wife. I then asked Delia Jackson if she had ever been legally married, and she said that she had not. This was after she had signed the deposition.

In adddition to Dupré's "statement" there was filed a deposition by him in which he declared that since the death of James Jackson he had heard Delia Jackson say that she never was legally married by a preacher with a license from the court house; that the statement was made to him after he took her deposition in the case of Delia Jackson vs. Illinois Central Railroad Company.

In overruling the motion for a new trial the court stated that defendant had not annexed to the motion an affidavit of any of its officers that it had discovered new material evidence since the judgment was rendered, although it had used every effort and diligence in its power to produce the same, as required by Art. 561 of the C. P., and hence it could not consider that ground for new trial, nor the *ex parte* affidavits in support of it.

That counsel of defendant, without showing any reason why some officer of the company could not take the required oath, requested permission to do so himself, but that it had refused this request, as counsel might well be ignorant of evidence material to the case, and yet his client be fully informed.

Referring to the exclusion of the *ex parte* affidavit of Delia Jackson by it, the court said that the plaintiff sued not only in her own right but as tutrix; that viewed as an admission, it did not consider that a mother could by affidavit admit away the rights of her minor children, and declare her children illegitimate. She could admit away her own rights, but not those of her children. That the affidavit was not offered AS AN admission, but as affecting plaintiff's testimony; that from that standpoint it understood the rule to be that the declarations of witnesses whose testimony has been taken under commission made subsequent to the taking of their testimony contradicting or invalidating their testimony as contained in the record is inadmissible in evidence if objected to; that the only way for a party to avail himself of such declarations is to sue out a second commission. That such evidence is always inadmissible until the witness whose testimony is thus sought to be impeached has been examined upon the point, and his attention particularly directed to the circumstances of the transaction so as to furnish him an opportunity for explanation or exculpation. That Rice on Evidence, p.

618, supported that view. That in the particular case before the court, not only was the manner in which the affidavit had been obtained not shown, but affiant had no opportunity to explain what representations were made to her, or to give an explanation in exculpation of her former testimony.

Counsel for defendant urge in this court that their objection to the interrogatory propounded to Delia Jackson and J. C. Camors under commission, that it was "leading," was intended to extend and did extend further than to its *mere form;* that the fact of marriage was the very fact at issue between the parties, and that instead of shaping the inquiry directly to that fact and proof thereof, the marriage was assumed in the question as having existed and the inquiry limited (on the hypothesis that there had been a marriage) to the ascertainment as to who was his widow and who were his children. That whether there had been a marriage or not was not for the witness to decide; that all the facts and circumstances going to show a marriage should, under the pleadings, have been asked and answered; that the answer of Delia Jackson that she was the "widow" of James Jackson was a "conclusion of law" and not evidence of a fact. They further urge that the *ex parte* affidavit of Delia Jackson was not offered to impeach her testimony as a witness, but as admission by her.

As the rights of the plaintiffs are essentially dependent upon the existence of a marriage between Delia and James Jackson, and the present demand must fail if sufficient evidence on that point be not adduced, however strong a case might be otherwise presented against the defendant, the state of the record on that question arrests our attention at the outset. Had the case been one in which Delia Jackson sued alone, and as widow of Jackson, resting her rights entirely upon testimony other than her own, the question of the admissibility as against her of declarations made by her subsequently to the bringing of the suit, to the effect that she had never been married to the deceased, would scarcely, we think, have been raised if established by the parol testimony of witnesses, or by written evidence duly proved up. We do not think it would have been claimed that before such declarations could be made available a foundation for their being introduced in evidence such as is required as a condition precedent in cases of the impeachment of witnesses. We understand the rule to be that all admissions mate-

rial to the issue voluntarily made by a party, whether oral or written, and however authenticated, are admissible against him. This is announced by Rice in his work on evidence (Vol. 3, page 500) as a rule *even in criminal cases.*

He refers to the two cases of People vs. McMahon, 15 N. Y. 384, and People vs. Wentz, 37 N. Y. 309. In the latter case the court, speaking of the opinion in People vs. McMahon, quoted Mr. Justice Selden as saying that " the law makes a distinction between a statement made before and one made after the accused was conscious of being charged with or suspected of the crime." If before, it is admissible in all cases, whether made under oath or without oath, upon a judicial proceeding or otherwise, but if made afterward, the law becomes at once cautious and hesitating. We do not understand plaintiff's counsel to have claimed on the trial, or to claim now, that Delia Jackson did not make the declarations stated in the affidavit at the time and place therein recited—that is to say that the affidavit did not *per se* prove those declarations to have been made by her.

Had this case been such a one as we have supposed, there being no question as to the affidavits furnishing sufficient and proper proof or authentication of the declarations themselves, we think it would have been admissible. If a party's counsel should urge surprise, or make any showing which would involve the voluntary character of the declarations or the good faith of the other side, the court should, unquestionably, as said by Mr. Justice Selden, become at once cautious and hesitating, and afford delay and every opportunity for investigation. If we vary the supposed case and introduce into it as a fact that the plaintiff should have gone upon the stand as a witness, and that subsequently she should have made declarations and admissions which negatived all right on her part in the action, would that fact alter the situation as to the admissibility of evidence of such declarations in the manner and form we have just been considering? We think not. Her *status* as a party plaintiff would not be merged into her *status* as a witness relatively to the effect of admissions made by her damaging to her case—*quoad* admissions we should consider her as a party, not a witness.

Leaving, however, hypothetical cases and coming to the case at bar, we find that plaintiff did not sue alone, but that she appears in this suit not only individually, but as the tutrix of two minors; we find

also that the rights of all the plaintiffs rest upon a common fact essentially necessary to exist and to be established by them, which is the marriage of Delia and James Jackson. When we come to examine the tender of evidence, we find the affidavit offered without restriction, as against both Delia Jackson herself and as against the minors she represents. As against the minors, we think it clear that these admissions were not admissible, and that the facts admitted would have to be established through testimony regularly taken. We think the court was right in excluding the affidavit in manner as offered. We express no opinion as to whether it should have been admitted as to Delia Jackson had it been offered simply as against her. Had it been permitted to have been introduced in that manner and the case had gone before the jury under such circumstances and full effect been given to it, we would doubtless have had the anomalous condition of the alleged rights of Delia Jackson being rejected by the jury because she was not the wife of the deceased, whilst the demand of the minors, in the same suit, would be maintained because she was his wife.

While under the circumstances of this case we sustain the action of the court in excluding the evidence offered, we find it impossible to let the verdict of the jury and the judgment of the court stand. We think that independently of the showing made by the defence, through the affidavits filed by the defence, that the testimony as to the marriage of Delia and James Jackson, particularly under the special denial of that fact in defendant's answer, is entirely too weak to justify a judgment. We attach little weight in this proceeding and under the pleadings therein to the fact that by an *ex parte* proceeding Delia Jackson was appointed natural tutrix of the minors. Whilst the affidavits which are in the record are not before us in strict regular form, we would not feel warranted in concluding either party with the doubts in our minds as to the actual rights of the parties to which they give rise. Davis vs. Dancy, 1 N. S. 589. In our opinion the district judge should have granted a new trial without reference to the technical objections assigned (C. P. 547).

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the verdict of the jury and the judgment thereon rendered, appealed from herein, be and the same are set aside, annulled, avoided and reversed, and that this case be remanded for a

.new trial, with special directions to have the testimony of Delia Jackson as to her marriage with James Jackson taken either in open ·court or regularly under commission.