### SCOTT et al. v. BROWN PAPER MILL CO. Inc.

No. 5453.

Court of Appeal of Louisiana. Second Circuit.

April 30, 1937.

Dhu Thompson, of Monroe, for appellants.

Thompson & Thompson, of Monroe, for appellee.

TALIAFERRO, Judge.

Plaintiffs, Mrs. Amelia Salter (now the wife of J. W. Scott), and Mrs. Beatrice Snody, sue to recover a five-eighths interest in the E.½ of S. E.¼ of Sec. 15 and the E.½ of N. E.¼ of Sec. 22 in Tp. 14 N., R. 3 E. situated in Caldwell parish. They disclaim possession of the land and deny possession thereof by defendant. Their allegations bring the suit within the provisions of Act No. 38 of 1908.

The land in controversy was patented to John J. Salter by the United States on June 18, 1914. He and Mrs. Scott were married in Rapides parish on July 9, 1909. He abandoned her about November, 1909, and died in the year 1915. Mrs. Snody was born June 22, 1910. Mrs. Scott claims a one-half interest in the land as the surviving widow in community of the patentee, while Mrs. Snody sues for one-eighth interest therein as one of his four children. He had at this time three children of a prior marriage, viz., John A., A. Walter, and Macey, who afterwards married a man by the name of Gus Cramer.

It appears that Mrs. Scott's maiden name was Amelia Cannon. She was first married to one Ryland. The record does not disclose how this marriage was dissolved. She next married S. M. Wingate in Rapides parish, August 2, 1905. Connubial relations between them were of short duration. He deserted her after wedlock of a few months and married again on November 3, 1907. She instituted suit against him for separation of bed and board on the ground of abandonment, in the district court of Rapides parish, and secured favorable judgment therein on February 27, 1907. The records of the parish do not disclose that this judgment was followed by a decree of final divorce. We are convinced, as was the lower court, that no such final decree was ever rendered. Mrs. Scott does not contend nor testify that she was granted such a divorce. The record in the case does not establish that Wingate was dead when plaintiff married Salter. Testimony on the subject rather supports the contention that he was then living. The presumption is that he was then alive. Rev.Civ.Code, art. 70; Succession of Herdman, 154 La. 477, 97 So. 664.

In view of these facts, defendant stoutly contends that the marriage to Salter was bigamous and produced no civil effects; that Mrs. Scott's status is not that of putative widow, and therefore neither she nor Mrs. Snody has, or ever has had, any interest as owners in the property sued for.

John A. Salter mortgaged his undivided interest (declared in the mortgage to be one-half) in the land to the Grayson bank. At foreclosure sale under this mortgage the bank acquired the interest of the mortgagee and sheriff's deed to it was executed April 21, 1923. The bank immediately instituted suit against its co-owners, A. W. Salter and Mrs. Gus Cramer, to effect a partition of the property by licitation. In this suit the bank admits its interest in the land to be only an undivided one-third. There was judgment ordering the partition as prayed for and at the sale thereunder George W. Ruddle became the adjudicatee. Sheriff's deed to him is dated September 18, 1923. He took possession of the land and exercised thereover the necessary acts of ownership to enable him to remove all the merchantable timber therefrom. This required more than six months from the beginning of operations. On August 10, 1925, Ruddle sold the land to the Columbia Timber & Manufacturing Company, Incorporated. This company sold it to the Louisiana Central Lumber Company on January 9, 1926, and defendant acquired the land from the latter company on July 15, 1931. All deeds in this chain of title are valid in form, translative of property, and were duly inscribed in the records of Caldwell parish.

Defendant called the Louisiana Central Lumber Company in warranty to defend it. Their defenses are virtually identical. Each interposed a plea of prescription of ten years, acquirendi causa, in bar of plaintiffs' right to recover, if they ever had any interest in the land, and allege, as a basis for these pleas, that defendant and its authors in title have had the actual, physical, open, peaceable, and uninterrupted possession of said land as owners in good faith under titles and deeds translative of property, for more than ten years. Defendant and the warrantor, in the alternative, each pray for judgment for the amount of tax-

es paid by them respectively on the property while they held title thereto.

The lower court in a written opinion sustained the plea of prescription, and rejected plaintiffs' demands. They have appealed.

■ We are convinced from the paucity of evidence pertinent to the question that Salter knew of no legal impediment to a marriage between himself and the widow Wingate. She told him she had obtained a final divorce from Wingate and he had no valid reason to doubt the truth of her statement. He was in good faith in contracting the marriage and as a consequence, so far as concerns him and his heirs, it produced civil effects. Miller v. Wiggins, 149 La. 720, 90 So. 109. One of such effects is that Mrs. Snody, sole issue of the marriage, occupies the status of legal heir to him. Rev.Civ.Code, arts. 117, 118; Ray v. Knox, 164 La. 193, 113 So. 814; Hondlenk v. John, 178 La. 510, 152 So. 67.

■ Mrs. Scott is not so favorably situated. She instituted and prosecuted to judgment a suit against Wingate for separation from bed and board. More than twelve months must have elapsed before a final divorce could be had. This she did not procure. Remarrying under such circumstances was wholly illegal and her bad faith is beyond question. She is not entitled to the benefits and advantages accruing to a putative wife.

■ Counsel for plaintiffs objected to the introduction of all evidence tendered by defendant to rebut that adduced by plaintiffs in support of their contention that Mrs. Scott's marriage to Salter was legal and not bigamous, on the ground and for the reason that such issue was not raised by the answers. Plaintiffs affirmatively alleged the legality of the marriage with Salter and that their asserted interest in the property sued for devolved upon them as a direct result of such marriage; that one acquired as surviving widow and the other as issue of the marriage. Defendant, answering these allegations, disclaims any knowledge of the facts thereof sufficient to justify a belief in regard thereto, and further says, "for the purpose of putting plaintiffs upon strict proof, denies said allegations," etc. The pleadings clearly developed the issue vel non of the validity of the marriage. It primarily devolved upon plaintiffs to substantiate their allegations before any judgment could be rendered for them. After they adduced the proof relied on by them, the defendant had the right to rebut or traverse same by any competent evidence at its hands. Spillman v. Texas & P. Ry Company, 17 La. App. 473, 135 So. 66; Green et al. v. New Orleans, S. & G. I. Ry. Company, 141 La. 120, 74 So. 717; Lynch v. Knoop, 118 La. 611, 43 So. 252, 8 L.R.A.(N.S.) 480, 118 Am.St.Rep. 391, 10 Ann.Cas. 807; Jackson v. Illinois Railway Company, 46 La. Ann. 226, 14 So. 514; Castagnie et al. v. Bouliris et al., 43 La.Ann. 943, 10 So. 1; McConnell v. City of New Orleans, 15 La. Ann. 410.

But this issue ceases to be of importance to the ultimate disposition of the case, since we agree with the lower court in its ruling on the plea of prescription.

■ Ruddle, after the sheriff's deed to him in the partition proceedings, in 1923, assembled crews of workmen and teams upon the land for the purpose of cutting and removing the timber growing thereon. These men and teams remained on the land night and day for about six months. The only building thereon was occupied by one of these workmen while the timber was being removed and for some time thereafter. After all timber suited for saw logs had been removed, a stave mill was established on the land and its operations continued until timber that would make staves had been manufactured into such. All of these activities and operations denuded the land of its timber of a commercial value, and to accomplish this, the entire tract had to be taken into possession and physically held for many months. Such acts of possession were unequivocal and certainly afford notice to the world of their purpose and leave unmistakable evidence of their nature and extent. This character of possession, it has been often held, is sufficient to form the predicate for prescription of ten years acquirendi causa. A long line of decisions support this conclusion.

In Baker v. Towles' Administratrix, 11 La. 432, it was said:

"Having a title, the cutting of wood, which, without one, would amount only to a trespass, must be regarded as an act of ownership and possession."

This doctrine was definitely approved in South Louisiana Land Company v. Riggs Cypress Company, 119 La. 193, 43 So. 1003, 1005, wherein the court said:

"There may be physical possession of swamp lands.

"The value of the land is in the trees. To cut them down and take them away requires considerable preparation and the use of different appliances. It may be that the mere cutting down of a few trees is not possession. It is different where operations are carried on with a view of pulling a number of trees, and when at every returning season work is done. The sound of the woodman's axe is heard; the stir of the hands; the swamp boat going up and down the small streams; its resounding whistle heard—all go towards denoting possession."

We discussed and passed on this question in Bodcaw Lumber Company v. Walker, 17 La.App. 373, 136 So. 191, and held that the removal of all the pine timber on the land involved and the building and operating of a tram road thereover were acts of possession on the part of defendant, holding under title translative of property and in good faith, sufficient to acquire the land by the prescription of ten years. See, also, McHugh v. Albert Hanson Lumber Company, 129 La. 680, 56 So. 636; Albert Hanson Lumber Company v. Baldwin Lumber Company, 126 La. 347, 52 So. 537.

The latest expression of the Supreme Court in this connection may be found in Kees v. Louisiana Central Lumber Company, 183 La. 111, 162 So. 817. The facts of that case are very much like those in the Walker Case, supra. The court's holding is the same as adopted by us in the Walker Case.

The nature of the corporeal possession sufficient to form the basis of the prescription of ten years often depends upon the character of the land. Chamberlain v. Abadie, 48 La.Ann. 587, 19 So. 574.

In Barrow v. Wilson, 38 La.Ann. 209, a plea of prescription was sustained where the lands involved were low and marshy, subject to tidal overflow, and the only act of possession on the part of the title holder was the grazing of his cattle thereon, supported by the payment of taxes.

The corporeal possession of the land by Ruddle was followed by civil possession. It is not necessary to the fruition of this prescription that corporeal possession should exist continuously for the entire ten-year period. Corporeal possession once begun is sufficient, and the intention of retaining such possession is presumed. Rev.Civ.Code, arts. 3442, 3443, and 3492.

In Jones et al. v. Goss et al., 115 La. 926, 40 So. 357, it was held:

"Actual possession of part with title to the whole and intention to possess the whole is possession of the whole; and actual possession thus commenced is continued by mere civil possession until ousted by a counter actual possession of one year."

Many other cases holding to the same effect are cited. The benefits flowing from Ruddle's corporeal and civil possession passed from him to his vendee and on down to defendant. It was a vested right which followed the property into the hands of each subsequent purchaser and passed with delivery of title. For the purpose of effectuating the prescription for the full ten-year period, the sum of all these possessions may be taken into consideration. Rev.Civ.Code, arts. 3493, 3495. The right to do this is recognized in Screen v. Trainor, 172 La. 51, 59, 133 So. 359.

Lastly, appellants argue that the sheriff's deed to Ruddle, because of its own recitals, is inadequate to constitute the basis of this prescription. We are unable to agree with this position. The deed to Ruddle declares that all the right, title, and interest of the Grayson Bank, A. W. Salter, and Mrs. Gus Cramer in and to the land was sold and conveyed to him. However, the judgment in the partition suit ordered the entire property sold and directed that the proceeds be paid, after deducting costs, to each co-owner in equal parts. The writ of sale followed the language of the judgment and the sheriff's return thereon discloses that the property itself was adjudicated to Ruddle. Considering all these documents together, it is clear that the sheriff was only authorized to sell and in fact did sell, and that Ruddle intended to buy and did actually buy the property in its entirety, without regard to the interest of the owners thereof. The whole estate was thereby vested in the vendee. This reasoning is supported by the following cases: Perkins v. Louisiana Land & Exploration Company, 171 La. 913, 132 So. 499; Scott v. Hayes-Gordon et al., 184 La. 1023, 168 So. 136; Perkins v. Wisner, 171 La. 898, 132 So. 493; Read v. Hewitt et al., 120 La. 288, 45 So. 143.

Early decisions of the Supreme Court held that a deed whereby the right, title, and interest of the vendor in real estate is conveyed was not sufficient to acquire by the prescription of ten years. This doc-

trine is expressly overruled in Read v. Hewitt, supra. The action of the court in this respect is affirmed in Perkins v. Wisner, supra.

For the reasons herein assigned, the judgment of the lower court is affirmed, with costs.